**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| A.F., et al., | |
| Plaintiffs, | **CIVIL ACTION** |
| *v.* | |
| LEISURE TIME PRODUCTS, LLC, et al., | **NO. 22-4914-KSM** |
| Defendants. | |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                    **February 7, 2024**

This is a product liability case brought by Plaintiffs Annemarie and Clyde Fairman,

individually, and on behalf of their minor child, A.F., against Defendants Leisure Time Products,

LLC, Sam's West, Inc., Step2 Company, LLC, and Installations, LLC ("Defendants").  (Doc.

No. 1.)  Plaintiffs seek damages for the partial amputation of A.F.'s left foot pinky toe.  (*Id.*)

A.F. suffered this injury while playing on a defective swing/slide set in the backyard of the

Fairman's home.  (*Id.*)  Before the Court is Plaintiffs' Unopposed Petition for Approval of

Minor's Compromise.  (Doc. No. 55.)  For the reasons below, the Court will grant the Petition.

**I.**     ***Background***

   **A.**     ***The Lawsuit***

On June 4, 2020, A.F., then age 7, was playing with a swing/slide set in the backyard of

her parents' home when she suffered a traumatic injury.  (*Id.* at ¶ 5.)  The defective product was

designed, manufactured, distributed, and on-site assembled by Defendants.  (*Id.*)  As a result of

her injury, A.F.'s left fifth toe was partially amputated through the distal phalanx.  (*Id.* at ¶ 6.)

On November 7, 2022, Plaintiffs brought suit in Pennsylvania state court, and Defendants timely

removed the action to this Court on December 9, 2022.  (Doc. No. 1.)

  **B.**  *The Settlement*

  After over a year of litigation, the parties agreed to a settlement.  (Doc. No. 55.)  Under the terms of the proposed settlement, Plaintiffs will receive a lump sum and future periodic payments to be allocated on a 66.6%–33.3% basis with their counsel.[1]  (*Id.* at ¶ 23; Doc. No. 55-1 at 22.)

**II.**  *Discussion*

  **A.**  *The Settlement*

  Under the Local Rules of this Court, "[n]o claim of a minor . . . shall be compromised, settled, or dismissed unless approved by the court."  E.D. Pa. Local R. 41.2(a).  In determining whether to approve a settlement made on behalf of a minor, a court must assess "whether the settlement amount is fair and in the best interests of the minor."  *Henderson ex rel. Bethea v. Nationwide Mut. Ins. Co.*, No. 00–1215, 2001 WL 43648, at *3 (E.D. Pa. Jan. 4, 2001).  A court must consider the parties' petition for approval of the settlement, which "should include all relevant facts and the reasons why the minor's guardian believes the settlement is desirable and why it is in the minor's best interest to settle the action."  *Lee v. Victoria's Secret, LLC*, No. Civil Action No. 10–3662, 2012 WL 628015, at *2 (E.D. Pa. Feb. 27, 2012).  "Relevant facts include

---

[1] The Court will not disclose the exact terms of the settlement here, including the amount, as the Petition and its supporting documents were filed under seal and there is a confidentiality clause in the settlement agreement itself.  (*See* Doc. No. 55-1 at 10–16.)

  At this point, the Court finds that it is appropriate to maintain the confidentiality of the settlement agreement.  Disclosure of the terms of the settlement could "work a clearly defined and serious injury" as to Defendants, including by hampering their ability to litigate and/or negotiate the resolution of future actions.  *Genentech, Inc. v. Amgen, Inc.*, No. 17-cv-1407, 2020 WL 9432700, at *6 (D. Del. Sept. 2, 2020) (granting motion to seal where "[r]evelation of the terms of settlement agreements . . . could place the parties at a demonstrable disadvantage in navigating and negotiating other litigation contests").  However, the Court reserves the authority to unseal the settlement agreement should it become necessary in the future to protect the public's right of access.

'a description of the minor's physical and/or psychological condition, a statement and/or discussion regarding the minor's current physical and/or mental health needs, evidence of the extent of the minor's condition, and the need for future medical and/or psychological care, as well as future expenses.'" *Id.* (quoting *Johnson v. Clearfield Area Sch. Dist.*, 319 F. Supp. 2d 583, 587 (W.D. Pa. 2004)). "Courts should give 'considerable weight' to the judgment of the parties and counsel, as they are 'typically in the best position to evaluate the settlement.'" *Id.* (quoting *Henderson*, 2001 WL 43648, at *2)).

Here, A.F. suffered a traumatic amputation to her left fifth toe, and the proposed settlement will ensure A.F.'s long-term financial stability and compensate her losses. (*See* Doc. No. 55 at ¶¶ 5–7.) The representations of counsel and a review of the medical records accompanying the Petition indicate there are no medical expenses expected to be incurred in the future as a result of the incident. (*Id.* at ¶ 22.) The settlement is also in A.F.'s best interest given the costs and risks associated with continuing litigation. It could take years to litigate this case through trial. Plaintiffs would have to bear the expense of preparing for and presenting experts at trial, and any recovery would likely be delayed through appeal. (*See* Doc. No. 55-1 at 22 (Contingent Fee Agreement detailing expenses born by Plaintiffs).) Plus, there is no certainty that A.F. would prevail at trial and, even if she did, there is certainly no guarantee that the jury would award her such a substantial sum.

The proposed settlement is the result of more than one year of litigation, and over three years of attorney pre-suit investigation. (Doc. No. 51.) The parties and counsel posit that settlement is in A.F.'s best interest, and considering the circumstances of the case, the Court agrees—the proposed settlement amount is fair and in A.F.'s best interests.

### B.    *Attorneys' Fees*

Our Local Rules likewise provide that "[n]o counsel fee . . . shall be paid out of any fund

obtained for a minor . . . as a result of a compromise, settlement, dismissal or judgment unless approved by the court." E.D. Pa. Local R. 41.2(c). "There is no question that competent attorneys should be compensated for their services," and attorneys who work on contingency fees run a risk by accepting cases without any guarantee of payment; however, a court has discretion to adjust the amount of counsel fees to be paid out of a settlement fund for a minor, even when a contingency arrangement is in place. *See Lee*, 2012 WL 628015, at *3; *Nice v. Centennial Area Sch. Dist.*, 98 F. Supp. 2d 665, 670 (E.D. Pa. 2000).

In determining the reasonableness of the attorneys' fees, the court must consider the lodestar amount set by the court of common pleas in the county with jurisdiction over the minor. *Nice*, 98 F. Supp. 2d at 670. A.F. lives in Montgomery County, Pennsylvania, so the following requirements govern:

> The fees of counsel, which shall not exceed 25% of the present value of a structured settlement, or 25% of the gross recovery of any other settlement, unless counsel has rendered extraordinary services.

Montgomery Cnty. (Pa.) Local R. 20 39(a)(1)(A)(7). Where, as here, a presumptive lodestar exists, the court "may adjust that lodestar depending on the effectiveness of the counsel's performance under the circumstances." *Lee*, 2012 WL 628015, at *4; *Johnson*, 319 F. Supp. 2d at 589 ("[U]nder Pennsylvania law, when a trial judge determines the amount of reasonable attorneys' fees in cases involving minors, the judge is not bound at all to the terms of a contingency agreement."). The Court should consider the following factors in determining whether to adjust the lodestar:

(1)     the amount of work performed;

(2)     the character of the services rendered;

(3)     the difficulty of problems involved;

(4)     the importance of the litigation;

4

(5)     the degree of responsibility incurred;

(6)     whether the fund involved was "created" by the attorney;

(7)     the professional skill and standing of the attorney in her profession;

(8)     the result the attorney was able to obtain;

(9)     the ability of the client to pay a reasonable fee for the services rendered; and

(10)    "very importantly," the amount of money in question.

*Johnson*, 319 F. Supp. 2d at 590–91 (citing *Nice*, 98 F. Supp. 2d at 671).  The Court considers the factors relevant to this analysis in turn.

*Amount of Work Performed and Character of the Services Rendered.*  Plaintiffs' counsel has represented Plaintiffs in this matter for more than one year and has been engaged in litigation preparations for over three years to investigate possible theories as to how and why the product was defective in its original design, manufacture, and assembly.  (Doc. No. 51 at 4.) Additionally, Plaintiffs' counsel engaged in extensive discovery to identify the actual company or individual responsible for the accident, contended with Defendants' vigorous opposition to liability, including Defendants' twenty affirmative defenses, and took part in full-day depositions of A.F.'s parents.  (*Id.* at 3.)

*Difficulty of Problems Involved.*  This case presented substantial problems in determining the proper defendant for liability due to the number of potential tortfeasors involved, including manufacturers, distributors, sellers, and assemblers.  (*Id.* at 3.)  Since the product was purchased seven years before the minor's injury, this investigation proved even more difficult.  (*Id.* at 2.) And, Plaintiffs' counsel organized pre-suit inspections involving photographing, laser mapping, disassembly and reassembly, in addition to arranging with engineers at Consulting Engineers and Scientist, Inc. on three occasions to discuss possible theories as to how the product was defective in its design, manufacturing, or assembly.  (*Id.* at 3.)

*Importance of the Litigation.*  This litigation is important because it compensates Plaintiffs following a substantial injury to a minor.  (*Id.* at 4.)

*Professional Skill and Standing of Counsel.*  Plaintiffs were represented by Bezark Lerner DeVergilis, PC.  Plaintiffs' lead attorney, Eric Lerner, Esquire, has been licensed to practice in the Commonwealth of Pennsylvania since 1978 and has nearly 46 years of experience in representing catastrophically injured persons in complex litigation.  (*Id.*)  Plaintiffs' counsel has been in good standing since 1978.  (*Id.*)

*Result Obtained.*  As discussed above, *see supra* Section II.A, Plaintiffs' counsel obtained a favorable result for the Plaintiffs.  Defendants vigorously contested liability and filed affirmative defenses and other legal claims in response to Plaintiffs' complaint.  (*Id.* at 3.)  But now, after more than three years of litigation and pre-suit preparation, they have agreed to settle this case for a lump sum sufficient to provide A.F. with compensation to recover for her medical expenses and trauma associated with a lifelong injury.

*Ability of Client to Pay for the Services Rendered.*  As Plaintiffs have not addressed the ability of the client to pay for the services rendered, this factor is neutral.

\*          \*          \*

Considering the factors together, the Court finds that the circumstances of this case warrant an upward adjustment from the 25% presumptive lodestar to 33% allocation to Plaintiffs' counsel.

Almost all of the factors weigh in favor of adjusting the lodestar upward: this lawsuit was legally and factually complex, has been pending for over one year (and Plaintiffs' counsel has been investigating the claims for more than three years), and involved multiple inspections and input from experts to determine the cause of injury, in addition to yielding hours of depositions;

Plaintiffs' counsel has nearly 46 years of experience and obtained a favorable result for A.F.; and Defendants vigorously contested liability with 20 affirmative defenses and multiple legal claims. (*Id.* at 3–4.)  *See Leto v. Illum*, CIVIL ACTION NO. 20-884, 2021 WL 2186238, at *4 (E.D. Pa. May 28, 2021) (granting upward adjustment from 25% presumptive lodestar given "the nature and extent of services rendered" and "the substantial effort involved in resolving this litigation given the uncertain outcome of the claims and the complexity of a resolution"); *Kane v. County of Chester*, CIVIL ACTION NO. 12-6649, 2016 WL 3997258, at *4–5 (E.D. Pa. July 25, 2016) (granting upward departure from the 25% presumptive lodestar where "the effectiveness of counsels' performance" weighed in favor of doing so).  *Contra Nice*, 98 F. Supp. 2d at 671 (declining to exceed the presumptive lodestar of 25% where the case was not factually or legally complex and plaintiffs' counsel's work was limited to drafting pleadings and defending a "handful" of depositions).

### C.      Case Expense Reimbursement

Finally, our Local Rules provide that "[n]o . . . costs or expenses shall be paid out of any fund obtained for a minor . . . as a result of a compromise, settlement, dismissal or judgment unless approved by the court."  E.D. Pa. Local R. 41.2(c).  Plaintiffs' counsel advanced expenses for experts, medical records, court filings, depositions, and other similar expenses.  (Doc. No. 55 at ¶ 21.)  Plaintiffs have approved these costs and agree to reimburse Plaintiffs' counsel from the settlement funds.  (*Id.* at ¶ 18.)  The Court finds these costs reasonable.

### III.    Conclusion

For the reasons above, the Court will grant the Petition.  An appropriate order, which has been filed under seal, follows.